IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHRISTOPHER HOLLIS, HERMAN PURVIS, and VERAKA STURDIVANT on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> vs. <br><br> VALLEY PROTEINS, INC., <br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CA No. 3:21-cv-00112-FDW-DSC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND**
**CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................... 1

II. FACTUAL & PROCEDURAL HISTORY .............................................................. 1

   A.  The Nature of Plaintiff's Claims ................................................................. 1

   B.  Procedural History of the Case ................................................................... 2

       1.  Briefing on Plaintiffs' Motion for Conditional Certification...................... 2

       2.  Discovery and Plaintiffs' Motion for Rule 23 Class Certification ............ 3

   C.  Discovery, Investigation, and Research...................................................... 4

   D.  Mediation and Settlement Negotiations...................................................... 4

   E.  Plaintiffs' Motion for Preliminary Approval ............................................. 5

III. SUMMARY OF SETTLEMENT TERMS............................................................ 5

   A.  Monetary Awards......................................................................................... 5

       1.  Estimated Unpaid Wages ........................................................................ 6

   B.  Eligible Employees ..................................................................................... 7

   C.  Releases....................................................................................................... 8

   D.  Tax Withholdings........................................................................................ 8

   E.  Allocation Formula ..................................................................................... 9

   F.  Attorneys' Fees, Litigation Costs, and Service Award........................... 10

   G.  Settlement Claims Administrator.............................................................. 10

IV. FINAL APPROVAL OF THE SETTLEMENT ................................................. 11

   A.  The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects. ................................................................. 11

   B.  The Proposed Settlement is Procedurally Fair........................................ 12

   C.  The Proposed Settlement is Substantively Fair. .................................... 14

       1.  Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1). ........................................................................ 15

2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2). .......... 16

3.    Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)................... 17

4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)................................................................................ 18

5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6). ................................................................................. 19

6.    Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7). .......................................................... 19

7.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)................................................................................... 20

V.    APPROVAL OF THE FLSA SETTLEMENT ............................................................... 21

VI.    CONCLUSION.............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................................ 21

*Blackmon v. Cohen*,
   2020 WL 91914 (M.D.N.C. Jan. 8, 2020) ..................................................... 12

*Brown v. Delhaize Am., LLC*
   2015 U.S. Dist. LEXIS 184265 (M.D.N.C. July 20, 2015) ............................. 18, 19

*City of Detroit v. Grinnell Corp.*
   495 F.2d 448 (2d Cir. 1974) ..................................................................... passim

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001 ............................................................................ 11

*de la Cruz v. Chopra*,
   2018 U.S. Dist. LEXIS 85213 (D. Md. May 21, 2018) .................................... 12, 22

*Deem v. Ames True Temper, Inc.*,
   2013 WL 2285972 (S.D.W. Va. May 23, 2013) ............................................. 16

*Domonoske v. Bank of Am., N.A.*,
   790 F. Supp. 2d 466 (W.D. Va. 2011) ......................................................... 17

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*
   573 F. Supp. 2d 205 (D.D.C. 2008) ............................................................ 17

*Evans v. Jeff D.*
   475 U.S. 717 (1986) .................................................................................. 20

*Flinn v. FMC Corp.*
   528 F.2d 1169 (4th Cir. 1975) .................................................................... 14

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ....................................................... 19, 20, 21

*Gaston v. LexisNexis Risk Sols. Inc.*,
   No. 516CV00009KDBDCK, 2021 WL 2077812 (W.D.N.C. May 24, 2021) ......... 17

*Hall v. Higher One Machs., Inc.*
   2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016) ............................... 12

*Hoffmann-LaRoche Inc. v. Sperling*,
   493 U.S. 165 (1989) .................................................................................. 21

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................... 16

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................... 16

*In re Austrian & German Bank Holocaust Litig.*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................... 17, 20

*In re Dollar Gen. Stores FLSA Litig.*
   2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ...................................... 13

*In re MI Windows & Doors Prods. Liab. Litig.*
   2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015) ........................................... 18

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ......................................... 16

*In re Vitamins Antitrust Litig.*
   305 F. Supp. 2d 100 (D.D.C. 2004) ....................................................................... 17

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ................................................................................... 11

*In re Warfarin*,
   391 F.3d 516 (3d Cir. 2004) ................................................................................... 17

*Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .................................................................................. 15

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ................................................................................... 21

*Lomascolo v. Parsons Brinckerhoff, Inc.*
   2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) ....................................... 12

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ....................................................................... 12, 22

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 16

*Matthews v. Cloud 10 Corp.*
   2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015) .................................... 13

*McKenna v. Champion Intern. Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ................................................................................ 21

v

*Muhammad v. Nat'l City Mortg., Inc.*
   2008 U.S. Dist. LEXIS 103534 (S.D. W. Va. Dec. 19, 2008)............................................ 12, 15

*Myers v. Loomis Armored US, LLC,*
   2020 WL 1815902 (W.D.N.C. Apr. 9, 2020) ..................................................................... 13, 19

*Newman v. Stein*
   464 F.2d 689 (2d Cir. 1972) ............................................................................................... 20

*Riddle v. City of Anderson,*
   2015 U.S. Dist. LEXIS 192079 (D.S.C. Jan. 26, 2015)..................................................... 17, 18

*Robinson v. Harrison Transp. Servs., Inc.*
   2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016) .................................................. 13, 14

*Saman v. LBDP, Inc.*
   2013 U.S. Dist. LEXIS 83414 (D. Md. June 13, 2013) ......................................................... 13

*Vaughns v. Bd. of Educ.*
   18 F. Supp. 2d 569 (D. Md. 1998)........................................................................................ 15

*Velasquez-Monterrosa  v. Mi Casita Restaurants*
   No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017)......................................... 20

*Velazquez v. Burch Equip., LLC*
   2016 U.S. Dist. LEXIS 29426 (E.D.N.C. Mar. 8, 2016) ...................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................................... 11

**Other Authorities**
Fed. R. Civ. P. 23 (e) ..................................................................................................... 11, 12

## I.      INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Unopposed Motion for Final Approval of the Collective and Class Action Settlement ("Motion").[1]  The Parties' settlement of this wage and hour class and collective action satisfies the criteria for final approval. Plaintiffs seek an Order approving as fair and adequate the class-wide settlement of this action, as set forth in the Stipulation of Settlement and Release ("Settlement Agreement") as well as approval of Plaintiffs' unopposed motions for attorneys' fees and expenses[2] and a service award. *See* Dkts. 24-30.  On March 8, 2022, the Court granted preliminary approval, directing notice be mailed to Class Members, and setting the date for the final fairness hearing as well as approving attorneys' fees and expenses and the requested service award. *See* Dkt. 114.  To date, only one Class Member has opted out of the settlement, and none have objected to it.[3]  With overwhelming support, and for the reasons stated below, the Court should grant final approval.

## II.     FACTUAL & PROCEDURAL HISTORY

### A.      The Nature of Plaintiff's Claims

Named Plaintiffs Christopher Hollis, Herman Purvis, and Veraka Sturdivant worked and/or work as drivers for Defendant at its various North Carolina locations.  Named Plaintiffs assert claims on behalf of themselves and all others similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.13, 95-25.22(a), (a1), and (d).  Named Plaintiffs claim that Defendant (1) maintains a corporate policy of failing to compensate Plaintiffs for all hours worked

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

[2] Plaintiffs have also filed a supplemental declaration in support of their motion for attorneys' fees and costs. *See* Dkt. 121.

[3]*See* Declaration of Lacey Rose, Angeion Group ("Angeion") Project Manager (hereinafter, "Angeion Decl."), attached here to as Exhibit A.

1

from clock-in to clock-out; (2) maintains a corporate policy of automatically deducting thirty (30) minute lunch breaks from Plaintiffs each shift, irrespective of whether Plaintiffs take the lunch break or not; (3) maintains a corporate policy of underpaying and failing to lawfully compensate Plaintiffs at the appropriate overtime rates, in light of Defendant's failure to incorporate all bonuses for purposes of the regular rate and overtime; (4) illegally deducts from Plaintiffs' wages; and (5) failing to pay Plaintiffs all owed earned and/or accrued promised wages. Plaintiffs claim that each of these alleged violations resulted in a failure to accurately calculate wages due, in violation of the FLSA and the NCWHA, including violating the NCWHA even in weeks when no overtime was worked.

## B. **Procedural History of the Case**

Plaintiffs filed their Complaint on March 19, 2021. *See* Dkt. 1.[4] On April 6, 2021, Opt-in Plaintiffs Coray McPhaul, Dale Murphy, Detric Edwards, Frank Young, Jerome Southerland, Michael Anthony Pate, Nelson Johnson, and Sean Lucas filed Consents to Joint Suit as Party Plaintiffs. Dkt. 9-1. On April 16, 2021, Opt-in Plaintiffs Justin Cofield, Terry Green, Rodney Johnson, Marcus Pittman, Ricky Rich, and Tony Washington, filed Consents to Joint Suit as Party Plaintiff. Dkt. 13-1.[5] On April 29, 2021, Defendant filed its answer to Plaintiffs' Collective and Class Action Complaint.

### 1. Briefing on Plaintiffs' Motion for Conditional Certification

[4] Plaintiffs filed their First Amended Collective/Class Action Complaint on September 13, 2021. Dkt. 60. Defendant filed its Answer to the First Amended Complaint on September 27, 2021. Dkt. 70.

[5] Subsequently, Opt-in Plaintiffs Danny Galbreath, Harold Kelly, James Lante Faison, Sterling Leary, Carnell Sowell, Vinson Manuel, Michael McCoy, Reginald Woods, Travis Rascoe, Christopher Herring, John Devane, Philip Teachey, Sheldone Cromartie, Tyrone Davis, Jeremy Adamas, Anthony Quick, John Finocchiaro, and Roger Thompson have also filed Consents to Join Suit as Party Plaintiffs. Dkts. 25-1, 34-1, 35-1, 35-2, 35-3, 36-1, 36-2, 36-3, 36-4, 41-1, 62-1, 82-1, 84-1, 88-1.

2

On April 20, 2021, Plaintiffs filed a Motion to Conditionally Certify this Matter as a Collective Action and for a Court-Authorized Notice to Be Issued Under Section 216(b) of the Fair Labor Standards Act ("Motion for Conditional Certification") and accompanying declarations of current and former drivers for Defendant. *See* Dkt. 14. On May 25, 2021, Defendant filed its response in opposition and accompanying declarations of corporate representatives, including Stuart Hylton, Defendant's Chief Financial Officer. *See* Dkts. 27, 28-3. On June 1, 2021, Plaintiffs filed their Reply in Support of Plaintiffs' Motion for Conditional Certification. Plaintiffs' Motion for Conditional Certification is currently pending before the Court.

2.     <u>Discovery and Plaintiffs' Motion for Rule 23 Class Certification</u>

Thereafter, the Parties engaged in extensive discovery, including the production of over 98,000 pages/documents, as well as multiple motions to compel and for protective order, and a motion to amend the case management order. Dkts. 39, 46, 48, and 53. On September 10, 2021, Plaintiffs filed their Motion for Rule 23 Class Certification and for appointment of Class Counsel. Dkt 55. On October 26, 2021, Defendant filed a Motion for Partial Judgment on the Pleadings and its Response in Opposition to Plaintiffs' Motion for Rule 23 Class Certification. Dkts. 75, 76. On November 8, 2021, the Parties filed a Joint Motion for Extension of Time regarding additional depositions, Plaintiffs' Response in Opposition to Defendant's Motion for Partial Judgment on the Pleadings, and Plaintiffs' Reply in Support of their Motion for Rule 23 Class Certification, pending their scheduled mediation. On December 20, 2021, Plaintiffs filed their Response in Opposition to Defendant's Motion for Partial Judgment on the Pleadings, as well as their Reply in Support of their Motion for Rule 23 Class Certification. Dkts. 91, 93. Both Plaintiffs' Motion for Rule 23 Class Certification and Defendant's Motion for Partial Judgment on the Pleadings remain pending before the Court.

3

### C. Discovery, Investigation, and Research

Plaintiffs' attorneys conducted an extensive investigation into the facts before and during the prosecution of the Action. This discovery and investigation has included among other things, (a) multiple meetings and conferences with first, the lead, Named Plaintiff, Chris Hollis, for several weeks or months before the filing of the Action, (b) inspection and analysis of documents produced by Named Plaintiff Hollis; analysis of the legal positions which could be taken by Defendant; (d) investigation into the viability of class treatment of the claims, and which claims would be suitable for class treatment; (e) investigation and discussion over other potential Named Plaintiffs and who would be suitable for such a responsibility; analysis of potential class-wide damages; (f) research of the applicable law with respect to the potential claims and potential defenses thereto; (g) inspecting and analyzing millions of lines of electronic data produced by Defendant during discovery and prior to mediation. Dkt. 111,

### D. Mediation and Settlement Negotiations

In anticipation of a voluntary mediation, Plaintiffs engaged in a damages analysis pursuant to data produced by Defendant as part of the parties' discovery obligations. Defendant produced weekly pay records, start and end dates, and other compensation data for every Rule 23 Settlement Class Member and Putative FLSA Collective Member, at that time. Plaintiffs and Defendant submitted mediation statements to the mediator. On December 1, 2021, the Parties attended mediation before mediator, A. Lee Parks, Esq., but were unable to reach an agreement. Dkt. 83. Following the failed mediation, the Parties resumed discovery as stated, *supra.* Despite the failed mediation, the Parties resumed settlement negotiation talks on or about December 22, 2021, through the assistance of A. Lee Parks, Esq., and Hunter Hughes, III, a nationally recognized class and collective and wage and hour mediator. The follow-up discussions, which began on or about December 22, 2021, ended on January 13, 20222. On January 14, 2021, the Parties filed a Joint

4

Notice of Settlement. Dkt. 98.

**E.** **Plaintiffs' Motion for Preliminary Approval**

On February 18, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Stipulation and Settlement Agreement, to (1) preliminarily approve the Parties' proposed settlement; (2) approve the appointment of Angeion Group, as Settlement Administrator; and (3) approve the proposed Notice and Claim Form. (Dkt. 105-1). On March 8, 2022, the Court preliminarily approved (1) the Parties' Stipulation and Settlement Agreement; (2) the proposed Notice for mailing, consistent with the procedures outlined in the Parties' Stipulation and Settlement Agreement; and (3) the appointment of Angeion as the Settlement Administrator. *See* Dkt. 114.

The Court set the deadline for members of the certified class to submit claim forms, opting out of the settlement, or submitting an objection as forty-five (45) days after the mailing of the notice of settlement. *See id.* The Parties were given forty-five (45) days from the mailing of the notice of settlement to respond to any objections. *Id.* The Court scheduled a fairness hearing for August 2, 2022, at 9:30 a.m., to determine whether the proposed Settlement Agreement is fair. *Id.*

Lastly, the Court appointed Angeion as the neutral, Third-Party Settlement Administrator and ordered and authorized Angeion to perform the administrative duties, consistent with the Parties' Settlement Agreement. *Id.*

**III.** **SUMMARY OF SETTLEMENT TERMS**

**A. Monetary Awards**

The Settlement Agreement creates a final, "all in" settlement fund, in the gross amount of $6,750,000, which covers all awards to putative Rule 23 Class and FLSA Class members, service awards to named and opt-in plaintiffs, attorneys' fees, settlement administration fees, and litigation costs. *See Id.* § II(A)(14). It provides that each member of the Settlement Class and Settlement

5

Collective submitting a timely claim form shall receive a prorated share of the Net Settlement Fund. *Id.* § III(C)(2). The Named and early Opt-in Plaintiffs will not be required to send back a claim form to be considered Authorized Claimants, as they have already opted into the case and/or have been active participants. *See id.* § III(C)(4). Each Participating FLSA Collective Member and Participating Rule 23 Settlement Class Member who timely returns the claim form will be entitled to receive a share of the Net Settlement Amount, proportionate to their alleged estimated actual damages as compared to the total alleged estimated damages for the entire class/collective. Specifically, funds will be allocated on a pro rata basis. If a Member's settlement amount equals less than $100, that Member's "Individual Settlement Payment" will be $100 or the guaranteed minimum Settlement Payment Amount. The amount that each Authorized Claimant will receive will be based on an estimate of the actual amount of unpaid wages that each Authorized Claimant would have earned had all hours of work been reported and overtime rates properly calculated.

       1.    <u>Estimated Unpaid Wages</u>

Plaintiffs' Attorneys, through the assistance of economist and statistician Roberto J. Cavazos, Ph.D., calculated the unpaid wages due for members of the Settlement Class and Settlement Collective Action, using Defendant's payroll data. Dkt. 95-1.

Regarding the *route drivers*, the amount of unpaid straight time and overtime was estimated by first calculating a route driver's regular rate of pay and overtime rate (i.e., "time-and-a-half") for each pay period where a driver worked at least 40 hours. The calculation of a route driver's regular rate of pay was determined by aggregating a driver's gross earnings in a given pay period and dividing the driver's gross earnings by 40. The route driver's regular rate of pay was then multiplied by 1.5 to calculate the driver's overtime rate. The driver's regular hours and overtime hours were then multiplied by the driver's calculated regular rate of pay and overtime rate of pay respectively to calculate what the driver should have bene paid. The difference between what the

6

route driver was paid, and what should have been paid at these calculated rates, is the damages for unpaid straight and overtime hours for a route river in a given pay period. Dkt. 95-1, at ¶ 24.

Regarding the *load pay drivers*, the calculation of a load driver's regular rate of pay was determined by aggregating a driver's gross earnings in a given pay period and dividing the driver's earnings by 40. The load driver's regular rate of pay was then multiplied by 1.5 to calculate the driver's overtime rate. Any hours up to 40 hours in a pay period were considered regular hours worked for a load driver, any hours in excess of 40 hours worked in a pay period were considered overtime for a load driver. The load driver's calculated regular hours and overtime hours were then multiplied by the driver's calculated regular rate of pay and overtime rate of pay respectively to determine what the load driver should have been paid. The difference between what the load driver was paid, and what should have been paid at these calculated rates, is the damages for all unpaid wages, including, promised straight and overtime hours for a load driver in a pay period. *Id.* 27.

Regarding wage deductions for all drivers, total damages for uniform deductions were calculated as the total of the weekly deductions. This period begins from March 29, 2019, to the end of the data, or approximately July 3, 2021. Dkt. 95-1, at ¶ 22.

Since the total potential damages exceeded the amount available to distribute, the pro rata share was calculated for each potential class member. For members of the Settlement Class or Collective who do not timely return a claim form or choose to opt-out, Defendant shall retain any settlement amount allocated to that individual. Dkt. 105-1, Ex. A, § III(B). Plaintiffs estimate the highest, claimed settlement award to be $125,220.42. Dkt. 121, at ¶ 7. Plaintiffs also estimate the average and median awards for class members will be approximately $7,101.69 and $1,634.82, respectively. *Id.*

## B. Eligible Employees

The Settlement Agreement defines the classes of persons who were eligible to submit

claims under this settlement as:

(i) "NCWHA Class," which corresponds to Plaintiffs' NCWHA Rule 23 class claims, means any individual employed by Defendant as a driver in North Carolina during the time period March 19, 2019 to January 13, 2022;

(ii) "FLSA Collective," which corresponds to Plaintiffs' FLSA Collective claims, means any individual employed by Defendant as a driver in North Carolina during the time period March 19, 2018 to January 13, 2022.

*See* Dkt. 105-1, § II(A)(32-33) (hereinafter "Settlement Classes"). The proposed Rule 23 Settlement Class recognizes the shorter two-year statute of limitations applicable to the state wage claims asserted pursuant to Rule 23.

### C. Releases

Upon approval by the Court, the Settlement Agreement shall bind the Named Plaintiff, Authorized Claimants, and Members of the Settlement Classes to all terms set forth in the Settlement Agreement, regardless of whether any particular member of the Settlement Classes timely submits a required claim form, or receives a Settlement Payment, described herein in Dkt. 105-1, § IV(A)(4), and V(A)(1), so long as such individual has not timely opted out of settlement pursuant to the opt-out procedures described in § V(A)(4) of the settlement agreement. *See id.* However, Members of a Settlement Class who do not submit a claim form shall not waive their claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. Id.*

### D. Tax Withholdings

Each Authorized Claimant shall receive their payment, separated into two equal amounts, with 50% allocated for unpaid overtime and unpaid wages and 50% allocated for liquidated damages and other relief under the FLSA and NCWHA. Dkt. 105-1, § III(D). The Settlement Administrator will report the portion of the Settlement Payment made to each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be

responsible for issuing the settlement checks, less required withholdings and deductions required by law, to each Authorized Claimant and mailing the settlement checks, Form W-2s, and Form 1099s to each such individual. However, Defendant will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount. The portion of each Settlement Payment allocated to liquidated damages and interest shall be reported as non-wage income to the recipient. Named and Opt-in Plaintiffs' Service Payments shall be reported as non-wage income to the recipients.

### E. Allocation Formula

Named Plaintiffs shall receive their unpaid wages plus an equal amount of their liquidated damages as calculated by Plaintiffs' Counsel, and Opt-in Plaintiffs shall receive a portion of their unpaid wages plus an equal amount of liquidated damages, as calculated by Plaintiffs' Counsel. Dkt. 105-1, § III(C)(2). The actual amount that each participating Authorized Claimant will receive will be determined pursuant to an allocation formula that reflects the relative value of their claims under Plaintiffs' theory of the case and is based on Plaintiffs' estimate of the actual amount of wages that each participating Member would have earned had all hours of work been properly calculated at the proper, applicable rates of pay. *Id.* Each Authorized Claimant who returned the claim form will be entitled to receive a share of the Revised Gross Settlement Fund, proportionate to their estimated actual damages as compared to the total estimated damages for the entire class. Specifically, funds will be allocated on a pro rata basis. *Id.*

To the extent any member of the Rule 23 Settlement Class did not submit the required claim form, chooses to opt out of the settlement, or otherwise elects not to accept their designated share of the Revised Gross Settlement Amount, their share will remain the sole and exclusive property of Defendant. *Id.* at § III(B).

F. **Attorneys' Fees, Litigation Costs, and Service Award**

Plaintiffs' Counsel filed a Motion for Attorneys' Fees and Reimbursement of Expenses, in addition to a Motion for Approval of Service Awards, both of which the Court preliminarily approved on March 8, 2022. *See* Dkts. 106, 108, and 114. At the scheduled August 2, 2022, fairness hearing, the Court will also determine whether to grant final approval of the preliminarily approved attorneys' fees and cost and service awards requested by Plaintiffs. *See* Dkt. 114. While Plaintiffs have sought fees as a percentage of the common fund, as is the norm in the Fourth Circuit, if the Court is inclined to consider a lodestar cross-check, the lodestar now totals $762,892.00 in fees and $65,546.92 in expenses, exclusive of the total travel costs and time associated with the final fairness hearing. *See* Dkt. 121, at ¶¶ 9, 11.

G. **Settlement Claims Administrator**

As stated, *supra*, the Court approved Angeion as the Parties' settlement administrator and authorized it to perform administrative duties outlined in its March 8, 2022, Order. Dkt. 114.

On February 24, 2022, Defendant's Counsel provided Angeion with a spreadsheet ("Class List") containing, among other things, the Employee ID, name, mailing address, and phone number for approximately 590 Class Members. *See* Ex. A, at ¶ 7.

Angeion thereafter formatted the Notices so that they were personalized for each recipient. On April 6, 2022 (the "Notice Date"), Angeion caused the Notice, Claim Form, and a self-addressed stamped envelope to be mailed in an envelope containing the name and logo of Plaintiff's Counsel (the "Notice Packet") via the United States Postal Service (USPS) first class mail, postage prepaid, to 590 Class Members ("Mailing List"). *See id.* ¶ 6. Prior to mailing, the addresses were processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. *Id.* ¶ 7.

10

As of today's date, no notices were returned with a forwarding address, and nineteen (19) Notices were returned by the USPS without a forwarding address and a verification address search ("skip trace") was conducted, in an attempt to locate an updated address. *See id.* ¶ 9. Of the 18 Notice Packets, returned as undeliverable, Angeion promptly undertook additional public record research to deliver those Notices and possible new addresses were obtained for eleven (11) of them. *Id.* at ¶ 9. Accordingly, as of today's date, only 8 Notice Packets remain as undeliverable.

The deadline for Class Members to submit a Claim Form was May 21, 2022. *See id.* at ¶ 12. Angeion determined there were a total of 311 unique claims timely submitted. Ex. A, at ¶ 12. As of July 25, 2022, $3,322,622.30, or 79.3 percent (%) of the allocated net settlement fund, have been claimed by 3111 Class Members that submitted a valid claim form. *Id.*

## IV.     FINAL APPROVAL OF THE SETTLEMENT

### A.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects.

As this settlement is both procedurally and substantively fair and adequate, the Court should grant final approval of the settlement.

Rule 23(e) requires court approval for a class action settlement to ensure it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine "the negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (stating that Rule 23(e) "is intended primarily to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion"); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is

11

an overriding public interest in settling class action litigation, and it should therefore be encouraged."). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable. *See Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019); *Berry*, 807 F.3d at 614; *In re Jiffy Lube Secs. Litig.*, 927 F3d at 158.

Courts within the Fourth Circuit favor compromise and settlement of class action suits. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *Blackmon v. Cohen*, No. 1:17CV890, 2020 WL 91914, at *1 (M.D.N.C. Jan. 8, 2020) (There is a "strong presumption in favor of finding a settlement fair."); *Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) (". . . there is an overriding public interest in favor of settlement, particularly in class action suits."); *Muhammad v. Nat'l City Mortg., Inc.*, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D. W. Va. Dec. 19, 2008) (same). A court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant Plaintiffs' Motion for Final Approval.

**B. The Proposed Settlement is Procedurally Fair.**

A proposed settlement is procedurally fair when it is reached through vigorous, arms-length negotiations and after experienced counsel had evaluated the merits of plaintiffs' claims. *See*

12

*Myers v. Loomis Armored US, LLC,* 2020 WL 1815902, at *7 (W.D.N.C. Apr. 9, 2020)[6] (finding the proposed settlement met the standard for approval as it reflects a reasonable compromise of a *bona fide* dispute); *Hood v. Uber Techs., Inc.,* No. 1:16-CV-998, 2019 WL 93546, at *5 (M.D.N.C. Jan. 3, 2019), *aff'd sub nom. Haskett v. Uber Techs., Inc.,* 780 Fed. Appx. 25 (4th Cir. 2019); *Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011). *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *12 (D. Md. June 13, 2013). Where negotiations are conducted at arms-length and in the presence of both counsel and an experienced mediator, there is a presumption that the settlement they achieved meets the requirements of due process." *See Matthews v. Cloud 10 Corp.*, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *see also Robinson*, 2016 U.S. Dist. LEXIS 86294, at *6.

Here, the settlement was reached after Plaintiffs' Counsel conducted a thorough investigation and engaged in substantial, contentious litigation, evaluating the claims and defenses, and after extensive, multi-week arm's-length negotiations between the parties. *See* Dkt. 111, ¶¶ 31-40. While the parties attended an in-person mediation session in early December 2021, the parties were unable to reach a final resolution and necessarily resumed litigation, including Plaintiffs' taking the deposition of multiple corporate officials for Defendant. *Id.* ¶¶ 35-38. Thereafter, and upon the completion of class certification briefing, in late December 2021 through early January 2022, the Parties resumed settlement negotiations with the assistance the original mediator, Lee Parks, Esq., as well as the help of nationally renowned mediator Hunter Hughes,

---

[6] Plaintiffs' Counsel was class counsel in *Myers*.

Esq., of Atlanta, Georgia. *Id.* ¶ 38. Over the next several weeks, the Parties continued to negotiate the terms of the settlement, which they memorialized in the Settlement Agreement. *See* Dkt. 105-1 (filed February 18, 2022). These arm's-length negotiations involved counsel and *two* mediators well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *Cf. Robinson*, 2016 U.S. Dist. LEXIS 86294, at *5-6 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (quotations omitted).

**C.  The Proposed Settlement is Substantively Fair.**

The Fourth Circuit evaluates substantive fairness and adequacy of a class action settlement considering the factors from the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), to analyze the substantive fairness of a class action settlement. *See DeWitt v. Darlington Cnty, S.C.,* 2013 U.S. Dist. LEXIS 172624, at *9-10 (D.S.C. Dec. 6, 2013); *Stone*, 749 F. Supp. at 1423; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citing *Grinnell* with approval).

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to possible

14

recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.[7] Here, the balance of the *Grinnell* factors weighs in favor of approval.

1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

"Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (citations omitted); *see also Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation are factors that support approval of a settlement."); *Vaughns v. Bd. of Educ.*, 18 F. Supp. 2d 569, 579 (D. Md. 1998).

This litigation has already lasted for nearly eighteen months, and general, class-wide merits discovery would involve written discovery from a sample of opt-in plaintiffs and multiple depositions. It is reasonable to expect that the case will only become more contentious and complex as it enters full discovery and trial preparation stages. Moreover, even post-trial, the ultimate result—regardless of outcome—may be the subject of an appeal. This factor thus weighs in favor of final approval.

---

[7]Alternatively, courts in this circuit have considered factors separately grouped under "fairness" (the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel) and "adequacy" ((1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strength of the defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement). *Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991). Section IV(A) on procedural fairness addressed the third and fourth factors under "fairness," while the first two factors correspond to *Grinnell* factor 3. With respect to adequacy, factors 1 & 2 are encompassed by *Grinnell* 4-6 and 8-9; factor 3 is the same as *Grinnell* 1; factor 5 is the same as *Grinnell* 2; and factor 4 is the same as *Grinnell* 7. Thus, while the discussion is organized to correspond to the *Grinnell* factors, all *Jiffy Lube* factors are encompassed by the discussion as well.

15

2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted). The lack of class member objections supports "the fairness of a settlement." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *19 (S.D.N.Y. May 1, 2008) (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013).

Here, the Notices sent to 590 Class Members included information regarding the claims they would be releasing as part of the settlement, their right to object to or exclude themselves from the settlement, as well as an explanation of how to do so and how to contact the claims administrator or Plaintiffs' counsel should they have questions regarding their rights or anticipated settlement amount. *See* Ex. A, Notice Packet, at 6-12. Following the issuance of notice, Plaintiffs' Counsel's office has received a significant number of calls from class members sharing their appreciation for the work done to reach a resolution and generally praising the overall results obtained. Dkt. 121, at ¶ 6. Moreover, of the 590 class members, only *one* Class Member requested exclusion, and *none* have objected to the settlement, which further supports a finding that the settlement is fair and reasonable. Ex. A, ¶¶ 13-14; *Mearidy v. Nthrive Sols., Inc.*, 1:20CV387, Dkt. 45, at 6-7 (M.D.N.C. Nov. 30, 2021) (citing *Deem*, 2013 WL 2285972, at *2) (holding the absence of numerous objections creates a strong presumption the settlement is favorable to the class members); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

16

### 3.    Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

"[C]ourts have a duty to ensure that the settlement does not 'come too early to be suspicious nor too late to be a waste of resources,' and that it is at 'a desirable point in the litigation to reach an agreement without further delay, expense, and litigation.'" *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 212-13 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004)). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d 516, 537 (3d Cir. 2004).[8] "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citation and internal quotation marks omitted); *Gaston v. LexisNexis Risk Sols. Inc.*, No. 516CV00009KDBDCK, 2021 WL 2077812, at *5 (W.D.N.C. May 24, 2021) (noting the extensive discovery and motion practice in the case, provided each side with the additional insight to evaluate the merits and laid the groundwork for arm's-length negotiations that resulted in the settlement).

While discovery had not yet closed at the time of the parties' mediation, the Parties had engaged in substantial discovery, including numerous discovery disputes prior to mediation, and Defendant had provided hundreds of excel spreadsheets for payroll and *millions* of lines of payroll

---

[8] *See also In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) (The proper question is whether the parties have the opportunity to "appreciate the full landscape of their case."); *Riddle v. City of Anderson*, 2015 U.S. Dist. LEXIS 192079, at *16 (D.S.C. Jan. 26, 2015) (finding that because both sides were fully aware of the factual issues, sufficient discovery had taken place); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (Extensive discovery is not necessary to justify a settlement when the parties have obtained sufficient information to evaluate the merits).

and timekeeping data, including thousands of documents related to Defendant's payroll policies. This extensive document production allowed for an evaluation of current Plaintiffs' and all class members' claims and the calculation of damages. Class Counsel was thus in a strong position to negotiate a fair settlement and advise Plaintiffs of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of preliminary approval. *See Hood,* 2019 WL 93546, at \*5 (finding that the exchange of a 322,215-line spreadsheet and reviewing summary judgment records in parallel lawsuits over the same issue, without conducting formal discovery, was sufficient to "allow [] the parties to adequately assess the claims and defenses.").

    4.   <u>Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).</u>

"In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at \*8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am., LLC*, 2015 U.S. Dist. LEXIS 184265, at \*5 (M.D.N.C. July 20, 2015) (same); *Riddle*, 2015 U.S. Dist. At \*18 (same). Indeed, a "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at \*38 (citations omitted). A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. *Id.* (citations omitted).

Here, a trial on the merits would involve significant risks for Plaintiffs. Plaintiffs would have to overcome Defendant's opposition to the automatic thirty (30) minute lunch deduction and wage deductions, the proper calculation of overtime, in light of bonuses received, as well as on the merits. Although Plaintiffs are confident they could prevail on liability, even if they do, there are risks with respect to the magnitude of damages, as the amount of unpaid time and its proper

calculation is in dispute. Plaintiffs are also realistic and recognize the inherent risks. Even if Plaintiffs prevail, this victory could only be obtained after extensive briefing and argument of an uncertain duration, and the process of trial and appellate litigation is always full of uncertainty. *Myers*, 2020 WL 1815902, at *4 (granting final approval of settlement for drivers asserting wage claims and noting "as other cases predicated on similar theories of liability suggest, this threat is real"). These factors thus weigh very strongly in favor of preliminary approval.

5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

While the Court has preliminarily granted Plaintiff's motion for conditional certification of the FLSA collective and certification of the Rule 23 class for purposes of the Parties' settlement only, should the Court not grant final approval of the Parties' settlement, the Parties would be compelled to return to their position in litigation and wait for the Court's ruling on such motions, which the Court previously deemed moot in light of the proposed settlement. Dkts. 14, 55, and 114 While Plaintiffs are confident that conditional and class certification would be granted, they would still face a motion to decertify at the conclusion of discovery, and there would be many issues in dispute, as the Parties moved into summary judgment and trial. Plaintiffs recognize that the inherent uncertainty about maintaining class and collective certification for the entire scope of the litigation, through trial. *See Brown,* 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

6.   Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7).

There is no evidence here as to whether or not the Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re*

19

*Austrian*, 80 F. Supp. 2d at 178 n.9); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017). Thus, given that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, even if Defendant could withstand a greater judgment, this factor should not be an obstacle to preliminary approval.

       7.    <u>The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).</u>

Approval of a class action settlement as reasonable under the relevant circumstances is within the sound discretion of the district court. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). "[T]here is a strong initial presumption the compromise is fair and reasonable." *Stone*, 139 F.R.D. at 339. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Based on Plaintiffs' estimate that approximately $11.5 million in overtime (for actual unpaid hours worked at time and one-half) would be due to members of the FLSA and Rule 23 Classes if Plaintiffs were to prevail on all of their claims, $6,750,000 is a reasonable settlement, particularly when factoring in the uncertainties of litigation. For example, if it were determined Plaintiffs' overtime should be calculated at half-time for hours over 40 per week, total unpaid wages for the class would be estimated at $4.3 million. Defendant, of course, has asserted throughout the settlement negotiations that its drivers have been paid for all of their hours worked

and are not otherwise entitled to overtime compensation. If Defendant were to prevail, even simply on the measure of damages, establishing that the proper calculation should be half-time instead of time and one-half, Plaintiffs' estimated damages would be reduced to an amount that is substantially less than or even nominal compared to the current settlement amount. Given this risk to Named, Opt-in/Current Participants and putative Plaintiffs and R.23 class members, this settlement is beneficial in that it provides a guaranteed monetary recovery that is potentially more generous than if the parties litigated this issue, and the Court ruled in favor of Defendant on one or more aspects of the claims. Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit.

\* \* \*

Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## V.       **APPROVAL OF THE FLSA SETTLEMENT**

Plaintiffs also request the Court approve the settlement of their FLSA claims. They have brought FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

21

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16. Because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved. Indeed, the Settlement satisfies the higher standard applicable to Rule 23 settlements, as discussed in section IV, *supra*, which should be conclusive in finding § 216(b) standards are satisfied.

## VI.     **CONCLUSION**

Accordingly, Plaintiffs respectfully request the Court grant final approval of the class settlement and the FLSA settlement.

Dated: July 26, 2022

Respectfully submitted,
BY: /s/ *Gilda Adriana Hernandez*

Gilda A. Hernandez (NCSB # 36812)
Charlotte C. Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiffs*

22

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 26, 2022, I electronically filed the foregoing true and accurate copy of **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECIVE AND CLASS ACTION SETTLEMENT** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Andrew J. Henson (NCSB No. 49266)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point, Suite 1500
Richmond, VA 23219
Phone: (804) 697-1390
Facsimile: (804) 697-1339
andrew.henson@troutman.com

Ashley Z. Hager (Georgia Bar No. 784505)
Emily E. Schifter (Georgia Bar No. 767888)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Bank of America Plaza
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Tel: (404) 885-3000
Facsimile: (404) 885-3900
ashley.hager@troutman.com
emily.schifter@troutman.com

*Attorneys for Defendant*

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB # 36812)
Charlotte C. Smith (NCSB No.: 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiffs*

23