UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-CV-00112-FDW-DSC

| | |
|---|---|
| CHRISTOPHER HOLLIS, HERMAN PURVIS, and VERAKA STURDIVANT *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>VALLEY PROTEINS, INC.,<br><br>Defendant. | ORDER |

THIS MATTER is before the Court on Plaintiffs' Unopposed Motion for Final Approval of the Collective and Class Action Settlement, (Doc. No. 119). For the reasons set forth herein, the motion is GRANTED, the settlement in this Action is APPROVED as fair, reasonable, and adequate, and the parties are hereby DIRECTED to take the necessary steps to effectuate the terms of the Settlement Agreement.

Named Plaintiffs Christopher Hollis, Herman Purvis, and Veraka Sturdivant worked and/or work as drivers for Defendant at its various North Carolina locations. Named Plaintiffs assert claims on behalf of themselves and all others similarly situated under the Fair Labor Standards Act (the "**FLSA**"), 29 U.S.C. § 216(b), and the North Carolina Wage and Hour Act (the "**NCWHA**"), N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.13, 95-25.22(a), (a1), and (d). Named Plaintiffs claim that Defendant (1) maintains a corporate policy of failing to compensate Plaintiffs for all hours worked from clock-in to clock-out; (2) maintains a corporate policy of automatically deducting thirty (30) minute lunch breaks from Plaintiffs each shift, irrespective of whether Plaintiffs take the lunch break or not; (3) maintains a corporate policy of underpaying and failing

to lawfully compensate Plaintiffs at the appropriate overtime rates, in light of Defendant's failure to incorporate all bonuses for purposes of the regular rate and overtime; (4) illegally deducts from Plaintiffs' wages; and (5) has failed to pay Plaintiffs all owed, earned, and/or accrued promised wages. Plaintiffs claim that each of these alleged violations resulted in a failure to accurately calculate wages due in violation of the FLSA and the NCWHA, including violation of the NCWHA even in weeks when no overtime was worked.

Although discovery had not yet closed in this case, the Parties had completed substantial, meaningful discovery as well as engaged in extensive motion briefing regarding discovery disputes and conditional and class certification. Following months of contentious litigation, the Parties agreed to participate in mediation. Following an initial failed mediation and a resumption in litigation, including additional depositions and certification briefing, the Parties resumed settlement negotiations and ultimately were able to reach a resolution through the assistance of two highly experienced mediators. As part of discovery, Defendant provided to Plaintiffs the necessary time and payroll data, including hundreds of excel spreadsheets for payroll and millions of lines of payroll and timekeeping data, and thousands of documents related to Defendant's payroll policies, which enabled Plaintiffs to conduct a data analysis and calculate possible damages for Plaintiffs and other similarly situated individuals.

On December 1, 2021, the Parties attended mediation before mediator A. Lee Parks, Esq. but were unable to reach an agreement. (See Doc. No. 83). Following the failed mediation, the Parties resumed discovery as stated, *supra*. Despite the failed mediation, the Parties resumed settlement negotiation talks on or about December 22, 2021, through the assistance of A. Lee Parks, Esq. and Hunter Hughes III, a nationally recognized class and collective and wage and hour mediator. The follow-up discussions began on or about December 22, 2021, and ended January

13, 2022. The next day, the Parties filed a Joint Notice of Settlement, (Doc. No. 98), and continued their efforts to finalize the agreement until February 18, 2022, when the Parties reached the Settlement Agreement described below. (Doc. No. 105-1).

On February 18, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement, consistent with the Parties' Stipulation and Settlement Agreement, to (1) provisionally certify the settlement classes; (2) appoint Plaintiffs' Counsel as Class Counsel; (3) approve the appointment of Angeion Group as settlement administrator; and (4) approve the proposed Notice and Claim Form. (Doc. No. 104).

On March 8, 2022, the Court preliminarily approved (1) the Parties' Stipulation and Settlement Agreement; (2) the proposed Notices for mailing, consistent with the Parties' Stipulation and Settlement Agreement; and (3) the appointment of Angeion as the Settlement Administrator. (Doc. No. 114). In its March 8 Order, the Court, consistent with the Parties' Stipulation and Settlement Agreement, also set the deadline for members of the certified class to submit claim forms, opt out of the settlement, or submit an objection. Id. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court scheduled a fairness hearing for August 2, 2022, at 9:30 a.m., to determine whether the proposed Settlement Agreement is fair, reasonable, and adequate. Id. Finally, Angeion was appointed to serve as the neutral, third-party Settlement Administrator in this case, and consistent with the Settlement Agreement, the Court ordered and authorized Angeion to perform the administrative duties as outlined in its March 8, 2022, Preliminary Approval Order. Id.

The Court has carefully considered the record, along with the oral argument presented at the fairness hearing. For the reasons set forth in the motion and stated on the record at the August 2, 2022, fairness hearing, and for good cause shown,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

1. Plaintiff's Unopposed Motion for Final Approval, (Doc. No. 119), is GRANTED, and the Court finally approves the settlement as set forth in the Settlement Agreement, (Doc. No. 105-1).

### Final Settlement Approval

2. "It has long been clear that the law favors settlement." United States v. Manning Coal Corp., 977 F.2d 117, 120 (4th Cir. 1992); see also Reynolds v. Fid. Investments Institutional Operations Co., Inc., No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan 8, 2020); In re Paine Webber Ltd. P'ships Litig., 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the action context."); Reed v. Big Water Resort, LLC, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 Newberg on Class Actions § 13.44, n1 (5th ed. Dec. 2019) (collecting cases).

3. The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." Beaulieu v. EQ Indus. Servs., Inc., No. 5:06-CV-0400-BR, 2009 WL 2208131, at 23 (E.D.N.C. July 22, 2009) (citing e.g., In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158-159 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. Sharp Farms v. Speaks, 917 F.3d 276, 293-94 (4th Cir. 2019).

### Procedural Fairness

4. The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs'

claims. See Myers v. Loomis Armored US, LLC, No. 3-18-CV-00532-FDW-DSC, 2020 WL 1815902, at *2 (W.D.N.C. Apr. 9, 2020); West v. Const'l Inc., No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) ("The Settlement was not hastily arrived at. Indeed, the Settlement followed lengthy discussions and considerable dialogue between the Parties, as well as arms-length negotiations involving extensive argument and counterargument."); Matthews v. Cloud 10 Corp., No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015); Saman v. LBDP, Inc., No. DKC 12-1083, 2013 WL 294047, at *4 (D. Md. June 13, 2013); In re Dollar Gen. Stores FLSA Litig., No. 5:09-MD-1500, 2011 WL 3841652, at *3 (E.D.N.C. Aug. 23, 2011); see also Toure v. Amerigroup Corp., No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation. . . [and] enlisted the services of an experienced employment [law] mediator).

5. Class Counsel conducted thorough investigations and evaluated the claims and defenses of the parties; engaged in substantial, meaningful discovery; and reached a settlement after a mediation and continued arm's-length negotiations between the Parties. (See generally, Doc. Nos. 105, 105-1, 110, 121).

6. In anticipation of a voluntary mediation, Plaintiffs engaged in a damages analysis pursuant to data produced by Defendant as part of the parties' discovery obligations. Defendant produced weekly pay records, start and end dates, and other compensation data for every Rule 23 Settlement Class Member and Putative FLSA Collective Member at that time. Plaintiffs and Defendant submitted mediation statements to the mediator. On December 1, 2021, the Parties attended mediation before mediator A. Lee Parks, Esq. but were unable to reach an agreement. (Doc. No. 83). Following the failed mediation, the Parties resumed discovery as stated, *supra.*

Despite the failed mediation, the Parties resumed settlement negotiation talks on or about December 22, 2021, through the assistance of A. Lee Parks, Esq. and Hunter Hughes III, a nationally recognized class and collective and wage and hour mediator. The follow-up discussions, which began on or about December 22, 2021, ended on January 13, 2022. On January 14, 2022, the Parties filed a Joint Notice of Settlement. (Doc. No. 98). These arm's-length negotiations involved counsel and two mediators well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. See West, 2018 WL 1146642, at *5 ("[T]here is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the Parties or their attorneys at the terms of this Settlement.").

### Fair, Adequate, and Reasonable

7. The settlement is substantively fair. See Sharm Farms, 917 F.3d at 299; Berry, 807 F3d at 614; In re Jiffy Lube Sec., Litig., 927 F.2d at 158-59; see also Detroit v. Grinnell Corp., 495 F.2d 448, 452 (2d. Cir. 1974), *abrogated on other grounds by* Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

8. The factors this Court considers in making a determination as to the fairness of the settlement are: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. See Berry, 807 F3d at 614; Scardelletti v. Debarr, 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam); In re Jiffy Lube Secs. Litig., 927 F.2d at 158-59.

9. Litigation through trial would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

10. The class members' reaction to the settlement was positive. The Notices sent to all Settlement Class Members included an explanation of their damages calculated pursuant to payroll and time records produced by Defendant and finalized on a pro-rata basis. The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed such individuals of their right to object to or exclude themselves from the settlement and explained how to do so. No Settlement Class Member objected to the proposed settlement, and only one settlement class member requested exclusion. Additionally, over 52% of Settlement Class Members returned a claim form, and over 79% of the allotted net settlement fund was claimed. This favorable response demonstrates the class approves the settlement, which further supports final approval. See e.g., West, 2018 WL 1146642, at *6 ("No objections have been filed in this case. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (internal quotations omitted); Deem v. Ames True Temper, Inc., No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D. W.Va. May 23, 2013); In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

11. The Parties have completed voluminous discovery and are in a competent position to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." West, 2018 WL 1146642, at *4; see Riddle v. City of Anderson, No. 8:12-cv-03480-TMC, 2015 WL 12830369, at *6 (D.S.C. Jan. 26, 2015). They did. Defendant has provided hundreds of excel spreadsheets for payroll and millions of lines of payroll and timekeeping data, including thousands of documents related to Defendant's payroll policies. This extensive document production allowed for an evaluation of current Plaintiffs' and all class members' claims and the calculation of damages. Moreover, Plaintiffs completed full

briefing on both a motion for conditional certification and class certification, which provided Plaintiffs and their counsel with a wealth of information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor weighs in favor of final approval.

12. "In complex, multi-year class actions, the risks inherent in the litigation are immense." In re MI Windows & Doors Prods. Liab. Litig., 2015 WL 12850547, at *8 (D.S.C. July 23, 2015) (citations omitted). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." Id. at *12 (quotation omitted). Plaintiffs must overcome probable attempts to decertify the FLSA collective action and certification of the Rule 23 Classes, if granted. As other cases predicated on similar theories of liability suggest, this threat is real. Moreover, Plaintiffs would still have to overcome Defendant's opposition to the automatic lunch and wage deductions, the proper calculation of overtime, as well as on the merits. Thus, the second and third factors weigh in favor of final approval.

13. There is no evidence whether Defendant could withstand a greater judgment, and even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment standing alone, does not suggest that the settlement is unfair." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005); see In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Because the first three factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

14. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." Frank, 228 F.R.D. at 186 (quotation omitted). This Court considers: (1) the relative strength of the plaintiffs' case on the merits; (2)

the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. See Sharp Farms, 917 F.3d at 299; In re Jiffy Lube Secs. Litig., 927 F.2d at 159; West, 2018 WL 1146642, at *4. The first two factors are the most important. See Sharp Farms, 917 F.3d at 299. For the reasons discussed herein, the settlement also satisfies these factors.

## APPROVAL OF THE FLSA AND RULE 23 SETTLEMENT

15. For settlement purposes only, the Settlement Classes are finally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

16. The Court hereby approves the FLSA collective action settlement.

17. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. See Lynn's Food Stores, Inc. v. United States, 679 F2d 1350, 1353 n.8 (11th Cir. 1982); see also McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. Lynn's Food Stores, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. Id. at 1354; McMahon, 2010 WL 2399328, at *15.

18. Here, the settlement was the result of a formal mediation involving arm's-length settlement negotiations. (See Doc. Nos. 53, 58). Throughout the lifespan of this action, Plaintiffs and Defendant were represented by counsel experienced in wage and hour law. Accordingly, the

Settlement Agreement resolves an actual dispute under the circumstances supporting a finding that is fair and reasonable.

19. The Court hereby approves the Rule 23 class action settlement.

20. Courts generally approve Rule 23 class action settlements when they are fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). After due consideration and inquiry into the circumstances surrounding the proposed settlement of Plaintiffs' collective FLSA claims and Rule 23 class claims under the NCWHA against Defendant, and review of the Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval set forth above, as the settlement reflects a reasonable compromise of a *bona fide* dispute. The Court further finds and concludes that the proposed settlement is just and reasonable, and in the best interest of the Parties. Additionally, the Court finds the settlement to have been reached in good faith. For the reasons set forth herein, the Court finds the Parties' Settlement Agreement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The Court finds the settlement proposal was negotiated at arm's length and the approved class representatives, Christopher Hollis, Herman Purvis, and Veraka Sturdivant, and Class Counsel have adequately represented the class. Moreover, the Court finds the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) the Parties' Settlement Agreement. The Court also finds the settlement proposal treats class members equitably relative to each other. See Fed. R. Civ. P. 23(e)(2)(A)-(D).

## DISSEMINATION OF NOTICE

21. Pursuant to the Court's order preliminarily approving the Parties' settlement, (Doc.

No. 114), all Rule 23 Settlement Members were sent court-approved notices by text message and first-class mail at his or her last known address.

22. The notices fairly and adequately advised Settlement Class Members of the terms of the settlement, as well as the right of Rule 23 Settlement Class Members to opt-out of or to object to the settlement, and to appear at the fairness hearing conducted on August 2, 2022. Settlement Class Members were provided with the best notice practicable under the circumstances.

23. The notices and their distribution met all constitutional requirements, including due process.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO PLAINTIFFS AND SELECT OPT-IN

24. The court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $2,250,000.00, which is one-third of the Gross Settlement Amount.

25. Class Counsel's request for one-third of the Gross Settlement Amount is reasonable. See Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (articulating factors to consider in analyzing whether a request for attorneys' fees in class action litigation is reasonable); In re Outer Banks Power Outage Litig., No. 4:17-CV-141-D, 2018 U.S. Dist. LEXIS 161714, at *6-10 (E.D.N.C. Sept. 21, 2018) (collecting cases); Hall, 2016 WL 5416582, at *7; Ferris v. Sprint Comme'nc Co., No. 5:11-cv-667-H, 2012 WL 12915716, at *3-4 (E.D.N.C. Dec. 13, 2012); Phillips v. Triad Guar., Inc., No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016); In re The Mills Corp., Secs. Litig., 265 F.R.D. 246, 261, 264 (E.D. Va. 2009) (same); Jones v. Dominion Res. Servs., 601 F. Supp. 2d 756, 758 (S.D. W.Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); see also Hess v. Sprint Communs. Co. L.P., No. 3:11-cv-00035-JPB, 2012 WL 5921149, at *3 (N.D. W.Va. Nov. 26, 2012).

26. In applying the common fund method, the Supreme Court and Circuit Courts across the country have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the defendant. See Boeing Co. v. Van Gernert, et al., 444 U.S. 472, 481-82 (1980); Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007); Waters v. International Precious Metals Corp., 190 F.3d. 1291, 1296-97 (11th Cir. 1999).

27. No Class Member objected to Class Counsel's request for one-third of the fund, which also provides support for Class Counsel 's fee request. See e.g., In re Outer Banks Power Outage Litig., No. 4:17-CV-141-D, 2018 U.S. Dist. LEXIS 161714, at *9.

28. Additionally, Class Counsel's request for one-third of the proposed settlement Fund–$2,250,000.00–amounts to a lodestar multiplier of less than 3. Lodestar multipliers of less than 3, as is the case here, have been found to be "modest" in the Fourth Circuit, further supporting Class Counsel's requested award. Nieman v. Duke Energy Corp., No. 3:12-cv-456-MOC-DSC, 2015 WL 13609363, at *1 (W.D.N.C. Nov. 2, 2015) (approving "an upward variance from a 4.5 multiplier"); Kruger v. Novant Health, Inc., No. 1:14-CV-208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar); Jones v. Dominion Res. Servs., 601 F. Supp. 2d 756, 758 (S.D. W.Va. 2009) (approving "a lodestar multiplier between 3.4 and 4.3 which is closer to the middle of the range considered reasonable by courts").

29. The Court also awards Class Counsel reimbursement of $63,000 in litigation costs or expenses in addition to fees.

30. The attorneys' fees and the amount in reimbursement of expenses shall be paid from the Gross Settlement Fund in accordance with the Settlement Agreement.

31. The Court finds reasonable service awards for Named Plaintiffs Christopher Hollis, Herman Purvis, and Veraka Sturdivant in the amount of $100,000.00, $50,000.00, and $50,000.00 respectively, and service awards for Opt-In Plaintiffs Justin Cofield, Rodney Johnson, Nelson Johnson, Ricky Rich, Terry Green, Sean Lucas, and Danny Galbreath of $2,000.00 each, in recognition of their support and significant efforts in prosecuting this case. These amounts shall be paid from the Gross Settlement Fund in accordance with the Settlement Agreement.

32. Consistent with the terms of the Settlement Agreement, the "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved in favor of final approval. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## **SETTLEMENT ADMINISTRATOR**

33. The Court confirms its prior Order appointing Angeion as the Settlement Administrator in this case, (Doc. No. 114), and the duties Angeion was previously ordered to perform therein.

34. Consistent with the Court's March 8, 2022, Order appointing Angeion as Settlement Administrator, Angeion shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts form the Qualified Settlement Fund it established in connection with this Settlement.

35. Within thirty (30) calendar days after the Effective Date of the Settlement Agreement, Defendant shall deposit the Qualified Settlement Amount ($6,750,000.00, less any amounts not claimed by Settlement Class Members, as instructed by Angeion) in a Qualified Settlement Fund account to be established by Angeion.

- Within five (5) calendar days after receipt of the Gross Settlement Amount, Angeion shall pay Class Counsel one-third of the Gross Settlement Amount ($2,250,000.00); reimburse Class counsel $63,000.00 in litigation costs and expenses; and pay the service award to Named Plaintiff Christopher Hollis, in the amount of $100,000.00; the service award to Named Plaintiff Herman Purvis, in the amount of $50,000.00; the service award to Named Plaintiff Veraka Sturdivant, in the amount of $50,000.00; and the service award to Opt-in Plaintiffs Justin Cofield, Rodney Johnson, Nelson Johnson, Ricky Rich, Terry Green, Sean Lucas, and Danny Galbreath in the amount of $2,000.00 each, in recognition of their support in prosecuting this case.

36. Within fifteen (15) calendar days after the Gross Settlement Amount is deposited into the Qualified Settlement Fund, Angeion shall distribute the funds in the fund by making the following payments:

- Paying the remainder of the fund (less the amounts set aside for payment of Angeion's own fees) to both FLSA and Rule 23 Settlement Class Members who timely returned the required claim form in accordance with the allocation plan described in the brief in support of preliminary approval of the settlement.

37. Settlement payments shall be made to each member of the Rule 23 Settlement Class who Angeion determines correctly and timely submitted a court-approved claim form, as required by the Settlement Agreement and the Court's Order granting preliminary approval of the Settlement Agreement, (Doc. No. 114). Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who did not timely exclude themselves from the settlement, the Opt-in Plaintiffs, and the Named Plaintiffs shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement. Specifically, as stated in the Settlement Agreement, this means:

- Upon the Effective Date, the Named Plaintiffs and Select Opt-in Plaintiffs who have separately executed a General Release, hereby forever completely settle, compromise, release, and discharge Defendant and its past, present, and future subsidiaries, affiliated companies, divisions, successors, predecessors, affiliates and assigns and all of their respective current or former owners, officials, directors, officers, shareholders, agents, employee benefit plans, plan administrators, representatives, representatives, employees, and attorneys from any and all claims that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions, alleged in the Litigation or by reason of the negotiations leading to the Settlement Agreement, including, but not limited to any claims under the FLSA and the NCWHA, except to the extent that any such claim may not be waived as a matter of law, and consistent with the fully executed General Release.  (See Doc. No. 105-1).

- Upon the Effective Date, Authorized Claimants who opted into the case as of the date of the Settlement Agreement, but who are not Named Plaintiffs or Select Opt-in Plaintiffs, hereby fully and completely release Defendant and its past, present, and future subsidiaries, affiliated companies, divisions, successors, predecessors, affiliates and assigns and all of their respective current or former owners, officials, directors, officers, shareholders, agents, employee benefit plans, plan administrators, representatives, representatives, employees, and attorneys from any and all claims, whether known or unknown, under the FLSA, the NCWHA, and any other wage-related or recordkeeping-related claims under any other applicable laws, and regulations, from March 19, 2018, through the date of this Order Granting Final Approval, including, but not limited to, (i) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims; and (ii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted

meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records.  (See Doc. No. 105-1).

- Each and every Settlement Class Member who did not return a Claim Form (and who are not a Named Plaintiff or Select Opt-in Plaintiff) hereby forever completely settles, compromises, releases, and discharges Defendant and its past, present, and future subsidiaries, affiliated companies, divisions, successors, predecessors, affiliates and assigns and all of their respective current or former owners, officials, directors, officers, shareholders, agents, employee benefit plans, plan administrators, representatives, representatives, employees, and attorneys from any claims they have against Defendant and its past, present, and future subsidiaries, affiliated companies, divisions, successors, predecessors, affiliates and assigns and all of their respective current or former owners, officials, directors, officers, shareholders, agents, employee benefit plans, plan administrators, representatives, representatives, employees, and attorneys under the NCWHA relating to the payment or non-payment of wages prior to the date of the Court issuing this Order Granting Final Approval.  (See Doc. No. 105-1).

38.     Pursuant to the Settlement Agreement, the Named Plaintiffs, Opt-in Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant and its past, present, and future subsidiaries, affiliated companies,

divisions, successors, predecessors, affiliates and assigns and all of their respective current or former owners, officials, directors, officers, shareholders, agents, employee benefit plans, plan administrators, representatives, representatives, employees, and attorneys, and are enjoined from pursuing any claim released as part of this settlement, (See Doc. No. 105-1), with the exception that for those Rule 23 Settlement Class Members who did not opt into the FLSA action, their FLSA claims are preserved.

39. The Court therefore GRANTS Plaintiffs' Unopposed Motion for Final Approval of the Collective and Class Action Settlement, (Doc. No. 119). The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

IT IS SO ORDERED.

Signed: August 2, 2022

Frank D. Whitney
United States District Judge